OPINION OF THE COURT
Armando Montano, J.
Defendant is charged with aggravated unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 511 [1] [a]), driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), leaving the scene of an incident without reporting (Vehicle and Traffic Law § 600 [1] [a]), driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]), and unlicensed operation (Vehicle and Traffic Law § 509 [1]).
Defendant moves for an order, pursuant to CPL 170.30 and 30.30, dismissing the accusatory instrument on speedy trial grounds.
The factual allegations in the accusatory instrument sworn to by the deponent, Police Officer (PO) Christia Quezada, read as follows:
“Deponent is informed by PO Mark Schmidt . . . , that [on or about April 21, 2016 at approximately 7:03 a.m. at vicinity of Bruckner Boulevard and Metcalf Avenue, County of the Bronx, State of New York], informant responded to a motor vehicle accident and observed a . . . Chrysler van (New York License Plate No. XXXXXXX), with its front end pressed against the rear of a . . . Hyundai (New York License Plate #XXXXXXX). Deponent further states that he observed said . . . Hyundai to be pressed against a . . . Subaru (New York License Plate # XXXXXXX).
“Deponent is further informed by informant that informant observed the aforementioned . . . Chrysler van to be damaged in that the front bumper of said vehicle was dented, the hood of said vehicle was lifted and the front passenger side headlight was hanging off of said vehicle. Deponent is further informed by informant that he observed said . . . Subaru to be damaged in that the rear end of the *179 vehicle was dented.
“Deponent is informed by C.A., that at the above time and place, a public roadway, informant observed defendant operating a . . . Chrysler van (New York License Plate #XXXXXXX), in that defendant was seated behind the steering wheel, keys in the ignition, and the engine running, moving along a public roadway. Deponent is further informed by informant C.A. that informant was seated in the drivers seat of a . . . Hyundai (New York License Plate #XXXXXXX) when the aforementioned . . . Chrysler van operated by defendant struck the rear of the aforementioned . . . Hyundai vehicle. Deponent is further informed by informant that defendant exited the vehicle and fled without providing his name, address and insurance information.
“Deponent further states that he observed defendant to have bloodshot, watery eyes, slurred speech, a strong odor of an alcoholic beverage on his breath, and unsteady on his feet.
“Deponent further states that he was present at the administration of a chemical test analysis of defendant’s breath, and defendant refused to take said test.
“Deponent further states that he obtained and read a teletype printout of the New York State Department of Motor Vehicles, whose computers are tied into our police computer for the purpose of obtaining records, which records were made in the course of business within a reasonable time after the event or occurrence, and said records show that the defendant’s license to operate a motor vehicle was suspended or revoked in that the defendant had in effect at least one suspension or revocation on at least one separate date for failure to answer, appear, or pay a fine.
“Deponent further states that the basis for believing that the defendant knew or had reason to know that his/her license was suspended or revoked is as follows: Department of Motor Vehicle records revealed that defendant’s license was suspended pursuant to Vehicle and Traffic Law 510.
“Deponent further states that he has reviewed defendant’s criminal history which is maintained by *180 the Department of Criminal Justice Service which indicated defendant was convicted of Penal Law Section 220.09 Possession of a Controlled Substance, Docket Number 2004NY034500, on October 29, 2004, in New York Criminal Court.
“Deponent further states that defendant stated, in sum and substance: WHY THE FUCK ARE YOU ARRESTING ME FOR DRIVING IF I DON’T HAVE A LICENSE.”
Procedural History
1. At arraignment on April 21, 2016, the People stated not ready because they had yet to obtain the necessary supporting depositions. The case was adjourned to April 26, 2016 for conversion.
2. On April 26, 2016, the People stated not ready as they still required two supporting depositions. The case was adjourned to June 21, 2016 for conversion.
3. On June 21, 2016, defendant failed to appear and a bench warrant was issued.
4. On June 22, 2016, defendant returned to court. The People stated not ready as they had yet to file and serve two supporting depositions. The case was adjourned to July 22, 2016 for conversion.
5. Off-calendar on June 23, 2016, the People filed with the court and served upon defense counsel the supporting depositions of PO Mark Schmidt and C.A., the certificate of translation of V.S., a certified copy of defendant’s Department of Motor Vehicles abstract of driving record, and a statement of readiness.
6. On July 22, 2016, the People stated that they were ready and maintained their readiness as of June 23, 2016. This court rejected the People’s June 23, 2016 statement of readiness due to a defective certificate of translation. The case was adjourned to August 15, 2016 for conversion.
7. On August 15, 2016, the People asserted that the complaint had been fully converted as of June 23, 2016. Defendant challenged the People’s statement of readiness and requested a motion schedule.
Parties’ Contentions
Defendant asserts that the People have yet to validly declare their readiness as the complaint was never converted due to an *181 insufficient certificate of translation for the alleged witness, C.A. Defendant points out that on July 22, 2016, this court deemed the complaint to be unconverted because the certificate of translation of V.S. was insufficient as it failed to indicate her qualifications as a translator. In spite of this court’s ruling, defendant avers that the People have failed to cure the defective certificate of translation and the complaint remains unconverted to this day. Since more than 140 days of includable time have elapsed, in excess of the statutorily prescribed time of 90 days, defendant argues that this court should dismiss all counts in the accusatory instrument.
In opposition, the People contend that they should only be charged with a total of 62 days for the time period from April 21, 2016 to June 23, 2016. The People maintain that they filed and served a valid certificate of readiness on June 23, 2016. Additionally, the People assert that the failure to file a certificate of translation does not render a complaint invalid, facially insufficient, or unconverted.
As to the contents of a certificate of translation, the People assert that the Criminal Procedure Law does not require any specific language indicating that the translator was fluent in both languages. The People submit that because the certificate of translation indicates that the translator translated the accusatory instrument to the informant and that the informant indicated that he understood what was translated, the certificate of translation at issue is valid and sufficiently establishes that the informant understood the contents of the complaint.
Although defendant does not challenge the substance of the certificate of translation, the People note that the translator attests to the fact that she read the accusatory instrument to the complainant in Spanish. Because the accusatory instrument is drafted in English, the People aver that it is implicit that the translator understands both Spanish and English and was able to translate the document in such a manner that the complainant understood the contents of the complaint.
Discussion
The top count of the accusatory instrument is an unclassified misdemeanor, which is punishable by a sentence of imprisonment of up to one year. (Penal Law § 55.10 [2] [c]; Vehicle and Traffic Law § 1193 [1] [b].) Pursuant to CPL 30.30 (1) (b), the People must be ready for trial within 90 days of the commence *182 ment of a criminal action where the defendant is charged with one or more offenses, at least one of which is a misdemeanor punishable by sentence of imprisonment of more than three months, and none of which is a felony.
“[CPL 30.30] does not address problems involving speedy trial rights or due process in a constitutional sense. [Instead], it is purely a statutory ‘readiness rule.’ It was enacted to serve the narrow purpose of insuring prompt prosecutorial readiness for trial, and its provisions must be interpreted accordingly.” (People v Sinistaj, 67 NY2d 236, 239 [1986].)
“Whether the People have satisfied [their 30.30] obligation is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People’s declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion.” (People v Cortes, 80 NY2d 201, 208 [1992].)
For CPL 30.30 purposes, in order for the People to be “ready for trial,” the People must satisfy two elements. First, there must be a communication of readiness by the People which appears on the trial court’s record by way of either a statement of readiness in open court or a written notice of readiness sent by the prosecutor to both defense counsel and the court clerk. (See People v Kendzia, 64 NY2d 331 [1985].) Second, the People must declare their readiness when they are in fact ready to proceed to trial. (Id. at 337.)
This court finds that defendant has met his initial burden “by alleging . . . that the prosecution failed to declare readiness within the statutorily prescribed time period.” (People v Luperon, 85 NY2d 71, 77-78 [1995].) To survive dismissal, the People must establish sufficient periods of excludable delay. (People v Santos, 68 NY2d 859 [1986]; People v Berkowitz, 50 NY2d 333 [1980].) “[O]nce the People set forth the statutory exclusions on which they intended to rely, defendant [must] identify the specific legal and factual impediments to those exclusions.” (People v Beasley, 16 NY3d 289, 292 [2011].)
It is well settled that a misdemeanor information must contain facts of an evidentiary nature that support or tend to support the crimes charged (CPL 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]) and contain nonhearsay allegations that *183 establish, if true, every element of the crimes charged (CPL 100.40 [1] [c]). Further, a misdemeanor information must provide reasonable cause to believe that the defendant committed the crimes charged. (CPL 100.40 [1] [b]; Dumas, 68 NY2d 729.)
The People cannot be ready for trial on an unconverted misdemeanor complaint. (People v Colon, 59 NY2d 921 [1983]; People v Sherman, 24 Misc 3d 344 [Crim Ct, NY County 2009]; People v Bendter, 184 Misc 2d 374 [Crim Ct, Kings County 2000]; CPL 100.10.) Where, as here, a criminal action is commenced by way of a misdemeanor complaint, the People must convert the complaint into an information by filing “sufficient supporting depositions . . . that remove all hearsay from the complaint and thereby establish a prima facie case against the defendant.” (People v Flores, 189 Misc 2d 665, 666 [Crim Ct, Queens County 2001].)
“Requiring that a nonhearsay accusation be filed as a condition precedent is a minimal but significant indication that the prosecution is legitimate. It reduces the possibility that one could be unjustly forced to stand trial by an overzealous or negligent prosecutor based on an indirect, incomplete, or inadequately investigated accusation.” (People v Phillipe, 142 Misc 2d 574, 578 [Crim Ct, Kings County 1989]; see also Matter of Edward B., 80 NY2d 458, 464 [1992].)
A supporting deposition is a “written instrument accompanying or filed in connection with ... a misdemeanor complaint” that is “subscribed and verified by a person other than the complainant” and “contain [s] factual allegations of an eviden-tiary character, based either upon personal knowledge or upon information and belief, which supplement those of the accusatory instrument and support or tend to support the charge or charges contained therein.” (CPL 100.20.) Therefore, “any document offered as a supporting deposition must either refer to the facts in the accusatory instrument or must recite factual allegations which substantially mirror those set forth in the accusatory instrument.” (People v Stridiron, 175 Misc 2d 16, 18 [Crim Ct, Queens County 1997].) “[T]he usual supporting deposition is merely a statement that the complaining witness has read the accusatory instrument and . . . the facts stated therein are true.” (People v Modica, 187 Misc 2d 635, 638 [Crim Ct, Richmond County 2001].)
*184 A supporting deposition must also be verified in accordance with CPL 100.30 in order to “assure a measure of reliability regarding the contents of the [document].” (People v Ackermann, 44 Misc 3d 626, 628 [Sup Ct, Bronx County 2014].) Criminal Procedure Law § 100.30 (1) (d) provides that a supporting deposition “may bear a form notice that false statements made therein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law, and such form notice together with the subscription of the deponent constitute a verification of the instrument.”
“[T]he form notice provides greater practical assurances against misstatements of fact than the more routine and mechanical procedure of swearing before a notary or some other official authorized to take an oath, because the form notice alerts the subscriber thereto of the real and significant possibility of criminal prosecution should the information be proven to be false.” (People v Charvat, 8 Misc 3d 13, 15 [App Term, 2d Dept, 9th & 10th Jud Dists 2005]; see also Matter of Neftali D., 85 NY2d 631, 635-636 [1995].)
Verification of a supporting deposition presupposes that the subscriber read and understood the contents of both the supporting deposition as well as the complaint. Bearing in mind the purpose of verification, “[t]he failure to properly sign and verify an accusatory instrument or supporting deposition . . . cannot be regarded as a mere irregularity curable at any later date, after expiration of the speedy trial period.” (Phillipe, 142 Misc 2d at 580-581.)
In an effort to convert the accusatory instrument, the People served the supporting deposition of C.A. along with the certificate of translation of V.S. This court is mindful that several courts have deemed the purported inability of a complainant or an informant to read or understand the accusatory instrument to be a latent defect which does not mandate dismissal of the accusatory instrument. (See Matter of Edward B., 80 NY2d 458 [1992]; People v Maceda, 40 Misc 3d 1213[A], 2013 NY Slip Op 51174[U] [Crim Ct, Queens County 2013]; People v Allen, 166 Misc 2d 916 [Crim Ct, Kings County 1996].)
Yet, the critical fact that the People do not seem to grasp is that the very act of filing a certificate of translation during the pretrial stage of this action has signified to the court that the informant, C.A., could not sufficiently read or speak English *185 without the assistance of a translator. (People v Banchs, 173 Misc 2d 415 [Crim Ct, Kings County 1997].) In the case at bar, “defendant alleges and it is undisputed by the People that the [informant] do[es] not speak nor read English.” (Id. at 416.) Because Mr. A.’s hearsay allegations are being used to support the accusatory instrument, a certificate of translation is required. As explained by the court in People v Camacho (185 Misc 2d 31, 35-36 [Crim Ct, Kings County 2000]):
“[0]nce the court determines that there are sufficient factual indicia to question whether the complaint and/or supporting deposition was adequately translated to a non-English-speaking complainant, the court may order, in its discretion, the filing of a certificate of [translation] ....
“Such filing is imperative, because it is based on the court’s determination that there is sufficient evidence to question the legitimacy of the complainant’s verification, and therefore, the court’s jurisdiction is no longer assured.”
On July 22, 2016, rather than dismissing the accusatory instrument, this court, in its discretion, ordered the People to file a valid certificate of translation. (See People v Hernandez, 47 Misc 3d 51 [App Term, 2d Dept, 9th & 10th Jud Dists 2015].) Despite being given ample opportunity to file a valid certificate of translation, the People have been steadfast in their refusal to do so.
With respect to the contents of a certificate of translation, the People correctly point out that the CPL does not explicitly outline what must be included in a certificate of translation for it to be valid. However, section 200.3 of the Uniform Rules for Courts Exercising Criminal Jurisdiction (22 NYCRR) provides that every paper filed in court must comply with CPLR 2101. Pursuant to CPLR 2101 (b):
“Each paper served or filed shall be in the English language which, where practicable, shall be of ordinary usage. Where an affidavit or exhibit annexed to a paper served or filed is in a foreign language, it shall he accompanied by an English translation and an affidavit by the translator stating his qualifications and that the translation is accurate.” (Emphasis added.)
Based on the foregoing, it stands to reason that if a paper served or filed in the English language was translated into a foreign language so that the subscriber could understand the *186 contents thereof, then the paper must be accompanied by an affidavit by the translator attesting to his or her qualifications and that the translation was accurate.
The certificate of translation annexed to the supporting deposition of C.A. reads as follows:
“I, V.S., state that on 04/26/2016, I translated the contents of the accusatory instrument against the above named defendant to C.A. in the Spanish language and also translated the fact that false statements made therein are punishable as a Class A misdemeanor pursuant to section 210.45 of the Penal Law. After translating the accusatory instrument to C.A., he/she indicated to me that he/she understood what was translated.”
First, the certificate of translation is not in the form of an affidavit. Second, the certificate of translation fails to provide any details about Ms. S.’s qualifications as a translator, including her proficiency in both the Spanish and English languages, and whether her translation was accurate. Since the certificate of translation annexed to the supporting deposition of C.A. fails to conform with CPLR 2101 (b), the certificate of translation is defective on its face and is therefore rejected by this court.
Here, all of the charges contained in the accusatory instrument are supported by the hearsay allegations of C.A. Due to the People’s failure to convert the accusatory instrument, all prior statements of readiness were illusory and of no effect. As of the date this action was first adjourned for motion practice on August 15, 2016 and less one day for the time period when a bench warrant was issued on June 21, 2016, this court finds that there is a total of 115 days of chargeable time.
Accordingly, defendant’s motion to dismiss the accusatory instrument pursuant to CPL 170.30 and 30.30 is granted and the accusatory instrument is hereby dismissed.